UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LINNIELL PHIPPS,<br><br>               Plaintiff,<br><br>    v.<br><br>ELDON VAIL et al.,<br><br>               Defendants. | CASE NO. C11-5093-BHS-JRC<br><br>REPORT AND RECOMMENDATION<br><br>NOTED FOR: February 3, 2012 |

This 42 U.S.C. § 1983 civil rights action has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B) and Local Magistrate Judge Rules MJR 1, MJR 3, and MJR 4. Plaintiff has been granted in forma pauperis status.

After review of the complaint (ECF No. 6), defendants' motion for summary judgment (ECF No. 30), and plaintiff's response (ECF No. 33), the Court ordered additional briefing (ECF No. 37) because the plaintiff raised a sub issue in his response and argued that the meals provided to him during Ramadan 2010 had food items missing and the meat provided in the meals was not "Halal" (ECF No. 33 affidavit of plaintiff page 3). The Court has considered the additional briefing (ECF No. 40 and 41). Although plaintiff has raised a number of issues – from the defendant's alleged violation of his right to receive meals in accordance with the Islamic tradition of Ramadan, to the defendants' alleged failure to make legal photocopies – plaintiff has

failed to meet his burden of presenting sufficient facts to support a cause of action. Therefore, the Court recommends that defendants' motion for summary judgment be granted and this action dismissed with prejudice.

## FACTS

The complaint contains four distinct and separate allegations. Plaintiff alleges his Eighth Amendment right to be free from cruel and unusual punishment was violated when prison officials stopped prescribing certain medical treatment after plaintiff refused to allow them to draw blood for testing (ECF NO. 6, page 6). Plaintiff alleges his right to access to court under the Fourteenth Amendment was violated when prison officials did not make photocopies for him (ECF No. 6, page 8). Plaintiff alleges defendants violated his First Amendment rights when certain publications were rejected by prison officials (ECF No. 6, page 10). The final allegation is that prison officials violated plaintiff's right to practice his religion by providing two sack meals for inmates who were fasting during Ramadan in 2010 (ECF No. 6, page 12).

In their summary judgment motions, defendants state:

> The Plaintiff had pancreatitis in 2007 and needed laboratory tests to check the status of his pancreas. The Plaintiff previously had blood work completed in August, 2006. Due to the need to check the status of his pancreas and in order to prescribe medication, the Plaintiff was informed he needed to submit to a blood draw for laboratory testing. However, Plaintiff refused to have the blood work performed on September 30, 2009. On October 7, 2009, the Plaintiff was informed that he would not be prescribed medication without having the proper laboratory work completed. Eventually, the Plaintiff agreed to have a blood draw on April 19, 2011. After an examination on May 10, 2011, the Plaintiff received a prescription for Zantac for gastro esophageal reflux (heartburn). Defendants Vail, Fraker and Morgan were not involved in the decision to stop the Plaintiff's prescription medication after he refused to consent to a blood draw on September 30, 2009. Exhibit 1, Declaration of Clifford Johnson.

(ECF No. 30, page 2).

1       Defendants argue that plaintiff has not shown any actual denial of access to court and that his claim is conclusory. In addition, defendants argue that plaintiff failed to follow the proper procedure to obtain photocopies and that he was not denied photocopies (ECF No. 30, page 3). Defendants state that in order to request copies an inmate in the IMU must submit a law library request for legal copies, a request to transfer funds, and an IMU legal mail log sheet. Defendants allege that plaintiff did not follow the proper procedure and, instead, requested photocopies by filing "kites." Id at 4.

      Defendants allege that plaintiff's publications were not rejected because of content or source, but because they were used books that did not come to the institution through proper channels. Defendants allege that prison officials have no easy way to determine if used books contain contraband (ECF No 30 page 3). Finally, defendants allege that the two sack lunches provided to Muslims provides a full day's worth of nutrition (ECF No. 30, page 5).

      In response to defendants' motion for summary judgment, plaintiff alleged that he did not receive all items on the menu in his food sacks, that the meat in the sacks was not "Halal," and that he was unable to fast due to lack of food the night before.(ECF No. 33, Plaintiff's "Affidavit of Proven Set of Facts," page 3). The Court ordered additional briefing in order to give the parties the opportunity to address the new allegations. Plaintiff provides no new information in his 18 pages of additional briefing. He states that the sacks contained either a cookie or a brownie, but never both, and never two cookies (ECF No. 38, page 3). Plaintiff provides what he terms a "missing items food list", but does not explain his list or tie his list to any facts (ECF No. 38, page 3 and 4). Plaintiff's additional briefing is rambling and contains new issues that are not properly part of this complaint or this action. These issues include not having soup on the food trays and lack of a hot meal.

1    Defendants note that the issues being raised by plaintiff are different than the issues

2    raised in the complaint (ECF No. 40). Defendants show that these new issues were never

3    exhausted through the prison grievance system and argue that they are entitled to dismissal on

4    this ground alone (ECF No. 40). Further, defendants contend plaintiff received all items allowed

5    for any given day and they were not aware items were routinely missing from the box meals

6    (ECF No. 40 Exhibit 2).  Defendants allege that if plaintiff had brought the allegations of missing

7    items to their attention, he would have been provided with the missing items.

## STANDARD OF REVIEW

9    Summary judgment is appropriate if "the pleadings, the discovery and disclosure

10   materials on file, and any affidavits, show that there is no genuine issue as to any material fact

11   and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c)(2). There

12   is a genuine issue of fact for trial if the record, taken as a whole, could lead a rational trier of fact

13   to find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see

14   also T. W. Elec. Service Inc. v. Pacific Electrical Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

15   1987); Fed. R. Civ. P. 56(e)(2). The moving party is entitled to judgment as a matter of law if the

16   nonmoving party fails to make a sufficient showing on an essential element of a claim on which

17   the nonmoving party has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23

18   (1985); Anderson, 477 U.S. at 254 ("the judge must view the evidence presented through the

19   prism of the substantive evidentiary burden"). When presented with a motion for summary

20   judgment, the court shall review the pleadings and evidence in the light most favorable to the

21   nonmoving party. Anderson, 477 U.S. at 255 (*citing* Adickes v. S.H. Dress & Co., 398 U.S. 144,

22   158-59 (1970)). Conclusory, nonspecific statements in affidavits are not sufficient; and, the court

will not presume "missing facts". Lujan v. National Wildlife Federation, 497 U.S. 871, 888-89 (1990).

DISCUSSION

1. Medical Treatment.

The government has an obligation to provide medical care for prisoners, and the Eighth Amendment prohibits deliberate indifference to their serious medical needs. Estelle, 429 U.S. at 103 (1976). Such conduct is actionable under 42 U.S.C. § 1983. See, e.g., McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), *reversed on other grounds*, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997).

To establish "deliberate indifference," a prisoner must show that a defendant purposefully ignored or failed to respond to the prisoner's pain or possible medical need. Estelle, 429 U.S. at 104; McGuckin, 974 F.2d at 1060. A determination of deliberate indifference involves an examination of two elements: (1) the seriousness of the prisoner's medical need; and (2) the nature of the defendants' response to that need. McGuckin, 974 F.2d at 1059. A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Id.

In order to establish deliberate indifference there must first be a purposeful act or failure to act on the part of the defendant. Id. at 1060. A difference of opinion between a prisoner and medical authorities regarding proper medical treatment does not give rise to a §1983 claim. Franklin v. Oregon, State Welfare Div., 662 F.2d 1337, 1344 (9th Cir. 1981). Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights. Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988). Further, a prisoner can make no claim for deliberate medical indifference unless the denial was harmful.

McGuckin, 974 F.2d at 1060; Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).

Plaintiff fails to show that the nature of defendants' response was anything less than reasonable. Thus, he fails to show the nature of the response to his need violated any constitutional right or duty owed him. As defendants note:

> Despite knowing his medications would not be renewed, Plaintiff refused to have his blood drawn alleging the blood draws were for nothing more than experimental testing. Without the appropriate tests, his treatment provider could not prescribe medication to the Plaintiff. Such behavior is not indicative of failing to provide care or being deliberately indifferent. Plaintiff's refusal to submit to needed blood tests amounts to a refusal of treatment and a disagreement with the method of treatment provided."

(ECF No. 30, page 11(citations omitted)).

Viewing the evidence in the light most favorable to plaintiff, plaintiff acknowledges that at first he refused the blood draw because he thought it was unnecessary and, as a result, that he did not receive medications, resulting in his health deteriorating (ECF No. 33, page 17). This is not inconsistent with defendants' position that plaintiff cannot receive medications if he refuses to submit to a blood draw.

This is not a case of refusal to treat an inmate, instead, this is a refusal by the inmate to allow proper treatment. The first claim is without merit and the Court recommends Defendants' motion for summary judgment be granted.

2. Photo copies.

The due process clause of the United States Constitution guarantees prisoners the right of meaningful access to the courts. Bounds v. Smith, 430 U.S. 817, 821 (1977). In Bounds, the Supreme Court held that the right of access imposes an affirmative duty on prison officials to assist inmates in preparing and filing legal papers, either by establishing an adequate law library

or by providing adequate assistance from persons trained in the law. Id. at 828.  In Lewis v. Casey, 518 U.S. 343 (1996), the Supreme Court has also held that a prisoner must show some actual injury resulting from a denial of access in order to allege a constitutional violation. Id. at 349.  An actual injury consists of some specific instance in which an inmate was actually denied meaningful access to the courts.  Sands v. Lewis, 886 F.2d 1166, 1171 (9th Cir.1989).

The right of access to court does not encompass any and all litigation.  The Supreme Court has opined:

> In other words, Bounds does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

Lewis v. Casey 518 U.S. 343, 355 (1996).

Plaintiff alleges the photo copy policy at the IMU was not followed and that defendant Jane Doe Gronseth refused to make photo copies for him (ECF No. 6, page 9). He alleges in conclusory fashion that the denial "hinder[ed], abride [sic] and or impeded the plaintiff effort's in pursuing A non-frivolous legal claim in state court's[sic]. " (ECF No. 6, page 9). He does not describe what kind of litigation he was pursuing.

Defendants first argue that the allegations are conclusory and ignore the pleadings requirements for setting forth an access to courts claim. The defendants also argue plaintiff did not follow the procedures an IMU inmate must follow to obtain copies (ECF No. 30, pages 13 - 14).

In his response to the motion for summary judgment, plaintiff argues that he sent numerous Kites requesting photo copies, but the record shows that this is not the proper

procedure. It is uncontroverted that the proper procedure for obtaining copies is to submit "a law library request for legal copies, a request to transfer funds and an IMU legal mail log" (ECF No. 30 page 3). Further, as defendants note, plaintiff does not show any actual injury to any case. In his response, plaintiff states that he had a pending case in the Walla Walla Superior Court, but he does not list the case (ECF No. 33, "affidavit of proven set of facts" page 2). The exhibits plaintiff supplies identify a case, Phipps v. Morgan Supreme Court case number 85319-3, Washington Court of Appeals number 29386-6-III, Walla Walla Superior Court cause number 04-2-00902-3 (ECF No. 33, page 54 of 122), but the documents do not show that the action challenges either a conviction and sentence or a condition of confinement. Further, the very exhibits supplied by plaintiff show the steps needed to obtain copies (ECF No. 33, page 48) the offender must do four things:

    1. Obtain a Law Library Photo Copy request Form CBCC 20-212,
    2. Complete and Form CBCC 20-212 to the librarian.
    3. Complete a Request to transfer funds DOC 07-012 form.
    4. Complete an IMU Legal Mail Log Sheet.

Plaintiff did not show that he followed these steps in requesting photocopies. Further, plaintiff has failed to place evidence before the Court showing that the Clallum County case was a challenge to his conviction or sentence or the conditions of confinement. The court recommends defendant's motion for summary judgment on this issue be granted.

    3.    <u>Books sent to plaintiff</u>.

Plaintiff alleges that on two different occasions he was denied gifts from two different prison projects that distribute gift books to inmates (ECF No. 6, page 10 of 18). Defendants agree with plaintiff's facts, but, show that the publications were rejected because they were used books, not because of the content or source of the publication (ECF No. 30, page 4-5).

| 1 | "A prisoner retains those First Amendment rights that are 'not inconsistent with his status
| 2 | as a prisoner or with the legitimate penological objectives of the corrections system.'" <u>Hargis v.</u>
| 3 | <u>Foster</u>, 312 F.3d 404, 409 (9th Cir. 2002) (*quoting* <u>Prison Legal News v. Cook</u>, 238 F.3d 1145,
| 4 | 1149 (9th Cir. 2001)). "A prison regulation that impinges on an inmate's First Amendment rights
| 5 | is "valid if it is reasonably related to legitimate penological interests." <u>Hargis</u>, 312 F.3d at 409-
| 6 | 10, (*citing* <u>Shaw v. Murphy</u>, 532 U.S. 223, 229 (2001) *quoting* <u>Turner v. Safley</u>, 482 U.S. 78, 89
| 7 | (1987)).

The Supreme Court has elucidated the factors that the Court considers:

> First and foremost, "there must be a 'valid, rational connection' between the prison regulation and the legitimate [and neutral] governmental interest put forward to justify it." <u>Turner</u>, 482 U.S., at 89 (*quoting* <u>Block v. Rutherford</u>, 468 U.S. 576, 586 (1984)). If the connection between the regulation and the asserted goal is "arbitrary or irrational," then the regulation fails, irrespective of whether the other factors tilt in its favor. <u>Turner</u>, 482 U.S., at 89-90. In addition, courts should consider three other factors: the existence of "alternative means of exercising the right" available to inmates; "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and "the absence of ready alternatives" available to the prison for achieving the governmental objectives.

<u>Id</u>. at 90. <u>Shaw</u>, 532 U.S. at 229-30.

Defendants contend that it is difficult to determine if a used book contains contraband. Things as innocuous as stains on a page may be contraband in the form of drugs. Therefore, the prison prohibits any used books to further the legitimate penological interest of stopping the flow of contraband. The problem posed by books has been considered by other courts. The United States District Court for the Northern District of California considered a case similar to the one before the court today and stated:

> Applying the *Turner* analysis to the ban on the receipt of books mailed by correspondents other than approved or verified vendors, the Court finds first that the regulation is rationally connected to the prison's concerns about contraband being smuggled into the prison in book packages to which third parties have had

> physical access. It is undisputed that book packages containing unauthorized items and/or bearing the labels of false vendors have been discovered by prison staff at San Quentin, and that books are convenient repositories for contraband and are difficult to search thoroughly.

Walker v. Calderon, 1997 WL 703774, page 3. The Court finds this analysis applies to used books, as well. Even if the book is sent to the facility by a vendor, the chance of the book being altered or tampered with increases when the book is used. Thus, because defendants have provided a "'valid, rational connection' between the prison regulation and the legitimate [and neutral] governmental interest" Shaw v. Murphy, 532 U.S. at 229-30, defendants are entitled to summary judgment.

Also, because of "the existence of 'alternative means of exercising the right' available to inmates" id., the defendants again prevail. Plaintiff may order the book he wishes from a vendor and receive a new copy or request gifts be of new books. Thus, the plaintiff has alternative means of obtaining the publication.

Finally, there is no ready alternative for prison officials. Allowing receipt of used books poses a risk to inmates and prison staff. A much more costly search process would have to be implemented. Plaintiff fails to show that the regulation is an exaggerated response to a valid penological need. The Court recommends that the motion for summary judgment be granted on this issue, as well.

    4.      Ramadan.

During the 2010 Ramadan, prisoners wishing to fast during daylight hours received two sack meals to be consumed after sunset and before sunrise. Plaintiff initially challenged only the fact that he received two meals instead of three (ECF No. 6 pages 12 and 13). Defendants moved for summary judgment and placed evidence before the Court showing that they provided an amount of food that was "nutritionally sufficient" and "Ramadan-specific" (ECF No. 30,

Exhibit 4, Declaration of Jackson). Attached to Mr. Jackson's Declaration is a "Nutrient Analysis Report" of the Ramadan-specific menu (ECF No. 3, Exhibit 4, attachment B). There were two meal options -- Box 1 or Box 2. Box 1 contained 2,750 calories and Box 2 contained 2,777 calories.

In response to the defendants' motion, plaintiff alleged that he did not receive all the items on the menu in his meal bags and that the meat was not "Halal." (ECF No. 33, page 6 of 122). The Court ordered additional briefing (ECF No. 37). Plaintiff's additional briefing is not helpful (ECF No. 38). Plaintiff does not set forth how often items were allegedly missing or what items he claimed he did not receive. He again makes the conclusory statement that the meat was not "Halal," but he provides no evidence to support his claim (ECF No. 38, page 4). Defendants argue that plaintiff failed to exhaust administrative remedies and show that plaintiff never filed any grievance regarding missing food items (ECF No. 40, Exhibit 1).

The Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") provides in relevant part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1. The term "religious exercise" includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). Under RLUIPA, plaintiff "bears the initial burden of going forward with evidence to demonstrate a prima facie claim" that the challenged action constitutes "a substantial burden on the exercise

of his religious beliefs." Warsoldier v. Woodford, 418 F.3d 989, 994 (9th Cir. 2005), *(citing* Cutter v. Wilkinson, 544 U.S. 709, 716-17 (2005)). To be considered a "substantial burden," the challenged state action "must impose a significantly great restriction or onus upon such exercise." Warsoldier, 418 F.3d at 995, *quoting* San Jose Christian Coll. v. City of Morgan Hill, 360 F.3d 1024, 1034 (9th Cir.2004).

While plaintiff pled a prima facie case, he has failed to come forward with evidence to support his claim. Further, the uncontroverted evidence is that plaintiff failed to exhaust his administrative remedies by notifying staff that he was allegedly missing items from his meals. In a § 1983 civil rights action, defendants have the burden of pleading and proving that plaintiff failed to exhaust administrative remedies. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). Defendants have met that burden (ECF No. 40, Exhibit 1). Plaintiff has not controverted it.

The Prison Litigation Reform Act ("PLRA") requires exhaustion of administrative remedies prior to filing a complaint in federal court. The relevant portion of the act states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e (a).

Because plaintiff is incarcerated the act applies to plaintiff. The Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") qualifies as "other Federal Law."The United States Supreme Court determined that Congress enacted the PLRA in order to reduce the quantity and improve the quality of prisoner suits. Porter v. Nussle, 534 U.S. 516 (2002). By mandating exhaustion, Congress enabled corrections officials to address prisoner complaints internally. "All 'available' remedies must now be exhausted; those remedies need not meet

of his religious beliefs." Warsoldier v. Woodford, 418 F.3d 989, 994 (9th Cir. 2005), *(citing* Cutter v. Wilkinson, 544 U.S. 709, 716-17 (2005)). To be considered a "substantial burden," the challenged state action "must impose a significantly great restriction or onus upon such exercise." Warsoldier, 418 F.3d at 995, *quoting* San Jose Christian Coll. v. City of Morgan Hill, 360 F.3d 1024, 1034 (9th Cir.2004).

While plaintiff pled a prima facie case, he has failed to come forward with evidence to support his claim. Further, the uncontroverted evidence is that plaintiff failed to exhaust his administrative remedies by notifying staff that he was allegedly missing items from his meals. In a § 1983 civil rights action, defendants have the burden of pleading and proving that plaintiff failed to exhaust administrative remedies. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). Defendants have met that burden (ECF No. 40, Exhibit 1). Plaintiff has not controverted it.

The Prison Litigation Reform Act ("PLRA") requires exhaustion of administrative remedies prior to filing a complaint in federal court. The relevant portion of the act states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e (a).

Because plaintiff is incarcerated the act applies to plaintiff. The Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") qualifies as "other Federal Law."The United States Supreme Court determined that Congress enacted the PLRA in order to reduce the quantity and improve the quality of prisoner suits. Porter v. Nussle, 534 U.S. 516 (2002). By mandating exhaustion, Congress enabled corrections officials to address prisoner complaints internally. "All 'available' remedies must now be exhausted; those remedies need not meet

of his religious beliefs." Warsoldier v. Woodford, 418 F.3d 989, 994 (9th Cir. 2005), *(citing* Cutter v. Wilkinson, 544 U.S. 709, 716-17 (2005)). To be considered a "substantial burden," the challenged state action "must impose a significantly great restriction or onus upon such exercise." Warsoldier, 418 F.3d at 995, *quoting* San Jose Christian Coll. v. City of Morgan Hill, 360 F.3d 1024, 1034 (9th Cir.2004).

While plaintiff pled a prima facie case, he has failed to come forward with evidence to support his claim. Further, the uncontroverted evidence is that plaintiff failed to exhaust his administrative remedies by notifying staff that he was allegedly missing items from his meals. In a § 1983 civil rights action, defendants have the burden of pleading and proving that plaintiff failed to exhaust administrative remedies. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). Defendants have met that burden (ECF No. 40, Exhibit 1). Plaintiff has not controverted it.

The Prison Litigation Reform Act ("PLRA") requires exhaustion of administrative remedies prior to filing a complaint in federal court. The relevant portion of the act states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e (a).

Because plaintiff is incarcerated the act applies to plaintiff. The Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") qualifies as "other Federal Law."The United States Supreme Court determined that Congress enacted the PLRA in order to reduce the quantity and improve the quality of prisoner suits. Porter v. Nussle, 534 U.S. 516 (2002). By mandating exhaustion, Congress enabled corrections officials to address prisoner complaints internally. "All 'available' remedies must now be exhausted; those remedies need not meet

federal standards, nor must they be 'plain, speedy, and effective.'" Porter v. Nussle, 534 U.S. 516 (2002) (*quoting* Booth v. Churner, 532 U.S. 731, 739 (2001)). "§ 1997e (a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." Porter, 534 U.S. at 520.

Plaintiff's claim that he did not get the food items on the menu is exactly the type of issue that can be addressed by prison officials quickly through an administrative grievance. Because plaintiff failed to exhaust his administrative remedies, defendants are entitled to summary judgment.

Defendants have raised the additional defenses of lack of personal participation and qualified immunity (ECF No. 30, page 6). Because the Court recommends dismissal, these two arguments have not been addressed.

The Court recommends that the motion for summary judgment be granted and that this action be dismissed with prejudice. In forma pauperis status should be revoked for purposes of appeal.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of de novo review by the District Court Judge. See 28 U.S.C. 636 (b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on February 3, 2012, as noted in the caption.

Dated this 9th day of January, 2012.

J. Richard Creatura
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13